UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. #04-10047-RCL

UNITED STATES

v.

LUIS RODRIGUEZ
A/K/A "ONE EYE LUIS"

---

CRIMINAL NO. #04-10049-WGY

UNITED STATES

v.

JUAN CONCE
A/K/A "KING SANTOS"

## ORDER ON DETENTION

March 5, 2004

ALEXANDER, M.J.

The defendants, Juan Conce A/K/A "King Santos," and Luis Rodriguez A/K/A "One Eyed Luis," appeared before this Court on March 3, 2004 for arraignments and detention hearings pursuant to indictments charging Mr. Conce with violations of 21 U.S.C. §§ 846 (conspiracy to distribute cocaine base), 841(a)(1) (distribution of cocaine base), and 853 (criminal forfeiture), and charging Mr. Rodriguez with violations of 21 U.S.C. §§ 841(a)(1) (distribution of cocaine base) and 853 (criminal forfeiture), 963

(conspiracy to import heroin).  Assistant United States Attorney Peter K. Leavitt appeared on behalf of the Government.  Attorney Steven Hrones represented Mr. Conce; Attorney Valerie Carter represented Mr. Rodrgiucz.

At the detention hearing, the Government moved for detention of both defendants pursuant to 18 U.S.C. §§ 3142 (f)(1)(C)(the offense carries a potential of ten or more years imprisonment pursuant to the Controlled Substances Act), (f)(1)(D) (criminal recidivism), and (f)(2)(A)(serious risk of flight); the government additionally moved that Mr. Conce be detained pursuant to 18 U.S.C. §3142 (f)(2)(B) (serious risk of obstruction of justice or intimidation of witnesses).  In support of its motion, the Government presented the credible testimony of Special Agent Sharon Huber ("Agent Huber") of the Federal Bureau of Investigation ("FBI").  Agent Huber's credible testimony include the averments set forth below.  The Court also recounts some of the documentary evidence adduced at the hearing, including a lengthy affidavit prepared by another agent working on the investigation, documents purportedly seized during and prior to the investigation, and various exhibits prepared and used by the government, including videotape evidence.

According to Agent Huber and the materials before the Court, the FBI, in conjunction with state and local law enforcement personnel, has participated in an investigation of violent "gangs" operating in and around the cities of Lawrence and Lowell, Massachusetts.

The investigation commenced in 2002 and continued for at least eighteen months.

The investigation included the use of police intelligence, cooperating witnesses, confidential informants, controlled purchases of weapons and drugs, and audiotape and video recordings (some of which were presented to the Court during the detention hearing). According to Agent Huber's testimony, the investigation focused on firearms and drug distribution by these groups, their members and their associates.

The Almighty Latin King/Queen Nation (the "Latin Kings")[1] and the Immortal Outlaws are alleged to be two gangs operating in the area. The Latin Kings were one target of the investigation.

The government contends that Mr. Conce is "Supreme Inca" of the Lawrence chapter of the Latin Kings, i.e., that he is a leader in the organization. In support of this averment, Agent Huber testified that through confidential informants and other sources, the investigation indicated that Mr. Conce is a leader of the Latin Kings. She proffered that there is additional evidence of his role as leader. For example, he is alleged to have mediated a dispute between two members of the gang; according to Agent Huber, mediation roles are only fulfilled by leaders in the organization.

The government also claims that Mr. Conce is involved in the distribution of contraband, including firearms and drugs (e.g., cocaine, cocaine base, heroin, "ecstasy,"

---

[1] The history of the Latin Kings, its organizational structure, and other information regarding the group (including its use of violence – from "beatings" to "executions" – to discipline its members for infractions of the organization's rules and bylaws) are set forth in some detail in the affidavit of Special Agent Mark Karangekis of the FBI, which was admitted into evidence without objection during the hearing.

and marijuana). In addition to reports detailing the negotiations for one particular purchase of cocaine, the government presented videotape evidence and testimony of Mr. Conce arranging for the sale of cocaine base to a cooperating witness.

Mr. Rodriguez is not alleged to be a member of any organized gang. Rather, the government alleges that he acts as a "middleman" for the Latin Kings during drug transactions and aids in the trafficking of contraband such as cocaine base and firearms. The government presented videotape from a controlled purchase in which Mr. Rodriguez purportedly sold twelve "rocks" of crack cocaine to an individual in exchange for $200.

In that an indictment is extant, there is probable cause to believe that the defendants committed the offenses with which they are charged. United States v. Vargas, 804 F.2d 157, 162-63 (1st Cir. 1986). The Court thus focused at the hearing on the issue of detention. In making that determination, the Court had the benefit of the evidence summarized above, arguments by counsel, and reports regarding the defendants from the Pretrial Services Office ("PSO").

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. . . ." 18 U.S.C. § 3142 (e); United States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990). "With regard to risk of flight as a basis for detention, the Government must prove by a preponderance of the evidence that no

4

combination of conditions will reasonably assure the defendant's appearance at future court proceedings." United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990). The burden of persuasion remains with the Government on the question of flight risk. *See* DiGiacomo, 746 F. Supp. at 1181, *citing* United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985).

However, in cases (such as the one at bar) involving violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, for which the defendant may be imprisoned for 10 or more years, there is a rebuttable presumption that there is "no condition or set of conditions [that] will reasonably assure the appearance of the person and the safety of any other person and the community." 18 U.S.C. § 3142(e). This rebuttable presumption operates to shift the burden of production, but not the burden of persuasion, to the defendant. *See* Jessup, 757 F.2d at 381. The rebuttable presumption reflects Congress's belief that narcotics traffickers have the resources and contacts to flee to other countries, and that they pose particular risks of recidivism if released pending trial. United States v. Arroyo-Reyes, 32 F.3d 561, 1994 WL 440654, *3 (1st Cir. 1994)(Table)(per curiam), *citing* United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir 1987) and United States v. Williams, 753 F.2d 329, 335 (4th Cir. 1985). *See also* United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). Nevertheless, because of the interference of pre-trial detention with the "importan[t] and fundamental . . . right" of liberty, United States v. Salerno, 481 U.S. 739, 750 (1987), this Court will not make such a finding lightly.

5

The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142(g).

First, the Court looks to the nature and circumstances of the offense charged against the defendants. There should be no doubt about the serious nature of the offenses at issue here. Cocaine base is a dangerous drug that has destroyed many lives, including those of its addicts. Organized criminal enterprises that distribute cocaine base and other drugs are loathed for the danger and destruction they bring to communities – particularly in cases such as the present ones in which the organization is associated with violence. Notwithstanding counsel's suggestion that the defendants distributed only small amounts of drugs, in the circumstances presented here, this Court finds the offenses at issue here to be most serious.

Second, the Court looks to the weight of the evidence against the defendants. In that an indictment is extant, the Court finds probable cause to believe that the defendants have committed the offenses charged. <u>Vargas</u>, *supra*. Even absent that indictment, however, there is sufficient evidence from which to conclude probable cause is present; the government presented the credible testimony of Agent Huber, videotape evidence of controlled purchases, and other exhibits. The Court finds that the evidence against the defendants is not insignificant.

The Court's third inquiry relates to the individual defendants. The Court addresses each of them in turn.

There is limited information available about Mr. Conce. Despite defense counsel's assertions to the contrary, the evidence before the Court indicates that Mr. Conce is a native of the Dominican Republic and subject to deportation if convicted on the instant offenses. He has a notable criminal record, which includes drug offenses and name violations, and which is replete with defaults. He has violated the terms of probation in the past, and his record indicates outstanding warrants for his arrest. Due in part to his criminal history, the government contends that upon conviction on the instant charges, Mr. Conce faces a term of imprisonment ranging from thirty years to life.

Mr. Rodriguez is an American citizen with ties to the District by operation of his residency here and the presence of five siblings. These ties, however, do not countenance release upon conditions.

Mr. Rodriguez is believed to use aliases and has a prodigious criminal record. Even after excluding the offenses on his record that he challenged at the hearing, his criminal history over the past ten years illustrates a plethora of violent and dangerous crimes as well as repeated defaults and probation violations. Indeed, he was on probation at the time he was arrested on the instant offenses. Like Mr. Conce, he has outstanding warrants for his arrest. The government contends that Mr. Rodriguez faces a maximum penalty of between twenty-one and twenty-seven years imprisonment if convicted on the charges presented here.

Finally, the Court looks to the nature and seriousness of the danger to any person

or the community that would be posed by the release of the defendants. The Court notes that the Latin Kings enterprise (within which Mr. Conce is alleged to be involved) is the type of dangerous conspiracy that is found to pose a continuing danger to the community. The rebuttable presumption that obtains here reflects Congressional belief that members of such organizations and their associates, if released, will continue to operate in illicit enterprises pending trial, and that the conspiracy itself often provides the means through which the defendants might flee. Arroyo-Reyes, *supra*; Palmer-Contreras, *supra*.

Against this backdrop, including the presumption of 18 U.S.C. § 3142(f)(1)(C), the Court concluded at the hearing that there is clear and convincing evidence that there are no conditions of release which could assure the safety of the community if the defendants were released pending trial. Also, considering the periods of incarceration and other penalties presented by a successful prosecution (and the fact that Mr. Conce appears subject to deportation upon conviction), the Court concluded by a preponderance of the evidence that each of the defendants pose a serious risk of flight.

Based on these findings and the factors outlined above, this Court ORDERED from the bench that the defendants JUAN CONCE A/K/A "KING SANTOS" and LUIS RODRIGUEZ A/K/A "ONE EYED LUIS" be detained pending trial.

Further, pursuant to 18 U.S.C. §3142 (i) it is ORDERED that:

1. The Defendants be, and hereby are, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. The Defendants be afforded reasonable opportunity for private consultation with their counselors; and

3. On Order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendants to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by the Defendant's filing of a motion for revocation or amendment of the Order pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.

_____
United States Magistrate Judge