UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
        v.                  )
                            )    CR. NO. 04-10047 RCL
LUIS RODRIGUEZ, a/k/a       )
   "ONE EYED LUIS"          )

       SENTENCING MEMORANDUM OF THE UNITED STATES AND
   OPPOSITION TO DEFENDANT'S REQUEST FOR DOWNWARD DEPARTURE

On April 14, 2005, the defendant, Luis Rodriguez, a/k/a "One Eyed Luis", pled guilty to the sole count of the indictment, charging him with the distribution of cocaine base, also known as "crack cocaine", in violation of 21 U.S.C. § 841(a)(1).  This memorandum is submitted to assist the Court in sentencing the defendant.

The Presentence Report prepared by the U.S. Probation Office, dated August 31, 2005 (the "PSR"), properly concluded that the defendant is a career offender under the United States Sentencing Guidelines, and that the defendant's Guideline Sentencing Range ("GSR") is therefore 188 to 235, based on a Total Offense Level of 31 and a Criminal History Category of VI. PSR ¶ 119.  The government requests that the Court sentence the defendant to a term of imprisonment of 188 months, representing the low end of the GSR.

I.  **BACKGROUND OF THE INVESTIGATION**

In 2002, the Federal Bureau of Investigation ("the FBI") commenced an investigation into drug trafficking and other suspected criminal behavior in the Lawrence and Lowell,

Massachusetts area by members and associates of the Almighty Latin King Nation ("Latin Kings").  Over the course of the investigation, cooperating witnesses ("CW's") working for the FBI made approximately 30 purchases of heroin, cocaine and cocaine base from members and associates of the Latin Kings.

All of the drug purchases were made in the Lawrence/Lowell. All of the purchases (and most of the conversations and negotiations leading up to the purchases) were consensually recorded.  Most of the deals also took place in a car equipped with audio and video equipment.  The CW's also wore transmitters during most of the purchases.  The transmitters enabled law enforcement agents to listen to conversations as they took place.

The investigation also disclosed substantial amounts of information regarding the organization and structure of the Latin Kings.  The Massachusetts Chapter of the Latin Kings is a street gang with hundreds of members in Lawrence, Lowell and other cities.  The Latin Kings operate local chapters throughout the state including chapters inside many correctional facilities. Many members of the gang are involved in a broad range of illegal activities including drug trafficking and crimes of violence undertaken in furtherance of protecting the interests of the gang and its members.

During the course of the investigation, the defendant was identified as a close associate of the Latin Kings in Lawrence.

The present indictment resulted from one aspect of this investigation: the distribution of crack cocaine by the defendant on December 29, 2005.

## II. THE DEFENDANT'S CRIMINAL HISTORY AND THE CAREER OFFENDER PROVISION OF THE GUIDELINES

The defendant's potential sentence in this case is driven by his lengthy criminal history. The defendant is in CHC VI wholly apart from operation of the career offender provision of the guidelines. PSR ¶ 58. The defendant's prior convictions include: distribution of cocaine (2003) (he served 6 months and was on probation when he committed the instant offense) (PSR ¶ 53); larceny from a person (2000) PSR ¶ 51); possession with intent to distribute cocaine (1997) (PSR ¶ 48); attempted breaking and entering (1995) (PSR ¶ 46); and assault & battery (PSR ¶ 45). The PSR concluded that the defendant has four career offender predicates. PSR ¶ 59.

The career offender provision of the guidelines is unique and should be accorded particularly heavy weight by sentencing courts after United States v. Booker, 125 S.CT. 738 (2005). The Sentencing Commission promulgated the career offender provision pursuant to a clear and specific Congressional policy declaration which was embodied in statute. In 28 U.S.C. § 994, entitled "Duties of the Commission", Congress directed the Commission to create a guidelines provision that would ensure that a certain, defined category of repeat offenders (so called "career

offenders") would be sentenced to a term of imprisonment at or near the maximum term authorized.

Section 994 directed the Commission as follows:

(h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--

    (1) has been convicted of a felony that is--

        (A) a crime of violence; or

        (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.); and

    (2) has previously been convicted of two or more prior felonies, each of which is--

        (A) a crime of violence; or

        (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.).

28 U.S.C. § 994(h).

In light of this Congressional directive, the Sentencing Commission promulgated the career offender provision of the guidelines (U.S.S.G. §4B1.1), which essentially mirrors 28 U.S.C. § 994(h). Accordingly, this Court should accord particularly heavy weight to the guideline sentencing range in this case (188 to 235 months) because it is based so clearly on both the

4

Congressional and Commission view that career offenders should be sentenced to a term of imprisonment at or near the maximum allowable.

III.    **DEFENDANT'S REQUEST FOR DOWNWARD DEPARTURE**

The defendant has requested that the Court depart downward to *time served* (19 months) based on the grounds that the defendant's "health is extremely fragile and he has not been adequately evaluated or treated in the 19 months he has been in custody." Defendant's Sentencing Memo. at 4.  The facts belie the defendant's contention.

At the Court's request, in response to a motion by the defendant, the defendant was recently evaluated at the Federal Medical Center in Devens, MA ("FMC Devens"). By letter to the Court dated July 13, 2005, David L. Winn, Warden, FMC Devens, provided the Court of the Study and Observation report of the defendant prepared by the medical staff at FMC Devens (the "Report"). The medical staff at FMC Devens diagnosed the defendant as "suffer[ing] from Asthma, Blindness in the right eye secondary to a shot gun blast to the face, and Post Traumatic Trigeminal Neuralgia." Report at 1. The medical staff concluded: "All of his diagnoses are stable and medications have been prescribed to maintain his condition." Id.

Simply put, the defendant cannot show that a departure is warranted based on his physical condition. In order for a

5

defendant's physical condition to be relevant to a possible adjusted sentence, a defendant must demonstrate "an extraordinary physical impairment." U.S.S.G. § 5H1.4. See also United States v. Rivera, 994 F.2d 942, 948 (1st Cir.1993) (departures based on a defendant's physical condition are "discouraged" under the guidelines).

The First Circuit has consistently refused to grant departures absent a showing that the prison system is unable to treat a prisoner's medical problems or that a defendant's life would be threatened by incarceration. See United States v. LeBlanc, 24 F.3d 340 (1st Cir. 1994)(defendant's heart disease, which could be largely controlled with medication, ongoing medical care and regular check-ups as administered in prison, was not found to be "extraordinary physical impairment"); United States v. Hilton, 946 F.2d 955 (1st Cir. 1991)(physical disorder that could be accommodated by prison facilities was not an "extraordinary physical impairment").

These cases demonstrate that the departure request should be denied. See also United States v. Winters, 105 F. 3d 200, 208 (5th Cir. 1997) (remanding departure given to defendant whose medical problems required no particular type of treatment; court noted that offender who suffered from cancer in remission, high blood pressure, a fused right ankle, an amputated left leg, and drug dependency was not entitled to a downward departure). See

generally United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987)("poor health, in and of itself, should not automatically shield a convicted felon from his just desserts").

The defendant's mental condition does not constitute an "extraordinary physical impairment." He has not shown that the medical care he will receive in prison is in any way inadequate or unsatisfactory. Nor has he demonstrated that the Federal Bureau of Prisons ("BOP") will be unable to provide an appropriate level of care or that incarceration will endanger or shorten his life in any way. In essence, all he is saying is that he can get better treatment for his mental condition outside of prison than inside prison. This is an insufficient basis to relieve the defendant from being held accountable for his actions and, in particular, his criminal history.

## CONCLUSION

For the foregoing reasons, the government requests that the Court sentence the defendant to a term of imprisonment of 188 months, representing the low end of the guidelines.

                                        Respectfully submitted,

                                        MICHAEL J. SULLIVAN

                                        United States Attorney,

                            By:  /s PETER K. LEVITT
                                PETER K. LEVITT
                                Assistant U.S. Attorney
                                One Courthouse Way
                                Boston, MA 02210
September 7, 2005                 (617) 748-3355