# MEMORANDUM

TO:     Bureau of Prisons

FROM:   Reginald C. Lindsay, USDJ

DATE:   July 6, 2006

RE:     Luis Rodriguez

The attached excerpt from the transcript of the sentencing hearing of Mr. Rodriguez reflects a colloquy between the court and the court's appointed expert, Dr. Paul Gross a board certified neurologist, with a subspecialty in epileptology. The transcript records the opinion of Dr. Gross as to the protocol that should be followed to assure proper care of Mr. Rodriguez, who has a seizure disorder. Specifically Dr. Gross outlines the frequency with which Mr. Rodriguez should be seen by a neurologist. The court recommends to the Bureau of Prisons that, to the extent possible, the protocol for consultation with a neurologist, as recommended by Dr. Gross, be followed.

In addition, Dr. Sandra Howard, Medical Director at FMC Devens testified that, at her facility, there is a "buddy system" in which one inmate can be assigned to assist another who, because of a disability, requires assistance in his activities of daily living. She testified that the Bureau of Prisons could make arrangements for Mr. Rodriguez to be monitored by a "buddy" who could assist Mr. Rodriguez in getting help should a seizure occur and in reporting the number and nature of seizures to the treating neurologist. The court recommends that, to the extent possible, Mr. Rodriguez be assigned such a "buddy."

```
 1
 2   correctly in my mind that your recommendation is that
 3   Mr. Rodriguez be under the care of a physician, ideally an
 4   epileptologist, that he have appropriate medication, and that
 5   he be regularly seen by the epileptologist or a physician, and
 6   that he be monitored so that when he sees his physician a
 7   reliable report can be made of his condition.
 8           THE WITNESS:  Yes, your Honor.  Could I elaborate
 9   on the point about the epileptologist?
10           THE COURT:  Yes, please.
11           THE WITNESS:  I -- you know, when asked I think --
12   I forget the exact wording -- I was asked what the absolute
13   best treatment for him would be.
14           THE COURT:  Yes.
15           THE WITNESS:  And I think that would be to see a
16   neurologist or an epileptologist.  But probably 95 percent of
17   people in this country are not seen by an epileptologist but
18   are seen by a neurologist.  I think it would be reasonable for
19   him, to be followed by a neurologist.
20           I think it would be substandard care to be seen by
21   a general physician who doesn't have familiarity with neurology
22   and neurology drugs.
23           THE COURT:  So if he has a neurologist and
24   monitoring in the manner we've discussed and appropriate
25   medication, how often should he have a consultation with a
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   neurologist?
 2              THE WITNESS:  It's a little hard to answer, your
 3   Honor, because it depends on how he does.  But, roughly
 4   speaking, I would probably see Mr. -- just putting myself in
 5   that situation, I would probably see Mr. Rodriguez once every
 6   two months or so for three or four visits, and then spread it
 7   out to every six months for three or four visits, and then
 8   perhaps more or less frequent depending on how well he's doing.
 9              THE COURT:  Once every two months.
10              THE WITNESS:  Two months, maybe three or four
11   times, then every six months three or four times.
12              But if -- for example, if he continued to do poorly
13   and have a lot of seizures, then I might see him monthly.
14              THE COURT:  Okay.
15
16
17
18
19
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com